## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | **CASE NO. CR-1-02-074** |
| | : | |
| v. | : | **HONORABLE S. ARTHUR SPIEGEL** |
| | : | |
| MAURICE JOUETT | : | **UNITED STATES RESPONSE TO** |
| | : | **DEFENDANT'S PETITION FOR** |
| | : | **RELIEF PURSUANT TO 28 U.S.C.** |
| | : | **§ 2255** |

**........................................................**

The United States, by and through the undersigned Assistant United States Attorney for the

Southern District of Ohio, hereby opposes the Defendant's Motion for Relief Pursuant to 28 U.S.C.

§ 2255.  Defendant's motion fails because he cannot demonstrate "cause" and "prejudice" (or actual

innocence) for his failure to raise his claims on direct appeal that (1) the trial court committed error

when it allowed defendant to be seen in handcuffs and (2) the jury found him guilty of cocaine base

rather than "crack."  Finally, he claims that his attorney was ineffective for failing to move to strike

an audio-tape where the transcript referred to the defendant.  The United States Court of Appeals

for the Sixth Circuit found any error in this to be harmless, and thus, even if the defendant could

demonstrate that this counsel was deficient, he can not demonstrate prejudice.  See United States

v. Maurice Jouett, 2004 WL 231781 (6th Cir. 2004).

### BACKGROUND

On February 26, 2002, a confidential informant contacted Agent Kyle Ingram of the

Regional Narcotics Unit ("RENU") (Motion to Suppress Transcript, October 15, 2002, at 22-23, 41).

Agent Ingram knew the informant, had used him five to six times before, and had always found him

reliable (Id. at 22-23, 33).  The informant told Agent Ingram that he had met the defendant, Maurice

Jouett (a/k/a "Nine"), on a previous occasion (Id. at 22).  The informant further stated that the

defendant could provide the informant with "substantial quantities" of crack cocaine (Id. at 22-23).

Consequently, on that same date, the informant came to RENU and called the defendant on the defendant's cellular phone at (513) 969-1812 (Id. at 23). The call was recorded (Id.). This allowed the agents to confirm the information that the informant had provided (Id.). During the call, the defendant indicated that he could obtain a "large quantity of crack and/or powder cocaine" (Id.).

A few days later, the informant returned to RENU to once again place recorded calls to the defendant (id. at 25). During these calls, the defendant and informant discussed five ounces of crack cocaine being provided to the informant as well as the price of the cocaine (Id. at 25-26).

The informant and defendant agreed to and did meet at the Frisch's Restaurant at 1001 Gest Street in Cincinnati, Ohio (Id. at 26). The defendant was driving a white Caprice Classic with a Kentucky license plate and was accompanied by his brother (Id. at 26). RENU officers observed this meeting and videotaped it as well (Id. at 28). During the meeting, the defendant became nervous when he saw an armored car pull into the parking lot, so they agreed to meet at the Maaco auto painting business ("Maaco") 15 minutes later, where defendant would sell the informant five ounces of crack cocaine (Id. at 29). The defendant then left the area and was followed by RENU officers (Id.). The defendant did not show up in fifteen minutes (Id.). Rather, he called the informant several times to delay the meeting (Id.). Each of these calls was taped (Id.). Ultimately, the defendant and informant spoke, and the defendant stated that he had the five ounces of crack cocaine (Id. at 31). The informant told the defendant that he had left the area and if the defendant still wanted to sell the crack cocaine to meet him at the McDonald's restaurant at the intersection of Queen City and Harrison Avenues (Id. at 32).

RENU officers continued to follow the defendant and his passengers (he had picked up

another passenger during this time) (Id. at 30, 32).  On the way to the McDonald's, RENU officers

stopped the defendant (Id. at 54).  Officers approached the vehicle and ordered the defendant to put

his hands up (Id. at 55).  He did not comply with the officer's request until the officer drew his gun

(Id. at 55).  Officers removed the defendant and patted him down (Id. at 55-56).  As a result of this

pat down, officers found a handgun in his pant pocket (Id. at 56).   The officers then searched the

car and found five ounces of crack cocaine in a [fast food] Long John Silver's bag (Id. at 56-57).

Ultimately, a jury convicted the defendant of possessing with intent to distribute more than

50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), possessing a firearm as a convicted

felon in violation of 18 U.S.C. § 922(g)(1), and carrying a firearm during or in relation to a

drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1).

## ARGUMENT

In his petition for relief, defendant claims (1) that his "5[th] and 6[th] Amendment rights under

the United States Constitution were abrogated when the jury saw [him] in handcuffs" and (2) that

the jury never found him guilty of "Crack" only "cocaine base."[1]  Defendant did not raise these

issues on direct appeal.  Thus, they are barred from being raised in a habeas petition absent "cause"

and "prejudice."  Davis v. United States, 411 U.S. 233 (1973); Francis v. Henderson, 425 U.S. 536

(1976); Wainright v. Sykes, 433 U.S. 72 (1977).  Accord Reed v. Ross, 468 U.S. 1 (1984) (Petitioner

must demonstrate cause for failure to raise issues on direct appeal); Knight v. United States, 37 F.3d

769, 773 (1st Cir. 1994) ("Having bypassed his opportunity to raise the [sentencing] claim on direct

appeal, he cannot raise it now on collateral attack."); United States v. Ward, 55 F.3d 412, 413 (8th

---

[1]Section 841(a)(1) of Title 21 forbids a person from possessing with intent to distribute
cocaine base.  Cocaine base's street name is "crack cocaine."

Cir. 1995) ("To the fullest extent possible, all arguments, even constitutional or jurisdictional ones should be made at trial and on direct appeal. . . . [A] point not properly preserved at trial or on direct appeal cannot be reached in a §2255 proceeding unless the petitioner can show both cause for the point's not having been previously raised and prejudice from the claimed legal error.").

There is no dispute that defendant failed to raise these arguments on direct appeal.  See Jouett, *supra*.  Moreover, defendant has failed to demonstrate "cause" for his failure to do so.  Thus, he is barred from raising these issues on collateral attack.

Finally, the defendant argues that his counsel was ineffective for failing to strike the audio-tapes because the jury saw the transcript that referred to him as "Nine."  To prevail, defendant must demonstrate that his trial attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment" and that these errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Defendant must show **both** that his counsel's performance was deficient and that it prejudiced his defense.  Chandler v. Jones, 813 F.2d 773, 781 (6th Cir. 1987).

The Strickland Court also cautioned strongly against hindsight assessments of trial counsel's strategy:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, **a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."**

466 U.S. at 689 (emphasis added; citations omitted).  Here, the defendant argued on direct appeal

that the allowing the Jury to see these transcripts was reversible error.  The Sixth Circuit rejected

this argument and found any error harmless.  <u>See</u> <u>Jouett</u>, 2004 WL at *2.  By definition harmless

error is not prejudicial.  Consequently, defendant's ineffective assistance claim also lacks merit.

## CONCLUSION

For the foregoing reasons, defendant's petition for habeas corpus should be denied.

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney


s/Amul R. Thapar
AMUL R. THAPAR (DC459489)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio  45202
(513) 684-3711

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Response to Defendant's Petition for Habeas Corpus  was sent via first-class mail on this  31st  day of May, 2005, to:

        Maurice Jouett
        Petersburg FC1
        P.O. Box 90043
        Petersburg, VA 23804

                    s/Amul R. Thapar
                    AMUL R. THAPAR (0074792)
                    Assistant United States Attorney